Commonwealth of Pennsylvania ex rel. W. U. Hensel, Attorney General, v. Order of Solon. Appeal of L. K. Porter.

*Corporations—Attorneys at law—Fees.*

Where two sets of officers each claim to be the rightful officers of a corporation, and litigation ensues which results in favor of one of the parties, the attorneys of the losing party are not entitled to be paid for their services in the litigation out of the funds of the corporation.

An auditors' finding, based on sufficient evidence, and approved by the court of common pleas, that an attorney at law is entitled to a certain fee for services rendered to an insolvent corporation, will not be reversed by the Supreme Court where no clear error appears.

Argued May 30, 1899. Appeal, No. 18, May T., 1899, by L. K. Porter, from order of C. P. Dauphin Co., June T., 1894, No. 310, dismissing exceptions to auditors' report. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report.

The auditors, James A. Stranahan, Esq., and Albert Miller, Esq., reported as follows:

In considering the claims of attorneys for services, very much testimony was taken before your auditors, as these claims cover a very large portion of the fund for distribution. The necessity for these services will give some insight as to the workings and management of this order. These claims will have to be considered almost separately, as the services claimed for were rendered at different times by the different claimants. Three of these, however, can be considered together, as their claim is for the same amount each, and for services rendered at the same

time by the three jointly. We refer to the claims of James Fitzsimmons, L. K. Porter and J. G. White. They claim $12,000 each. . . .

The claim of these attorneys was contested by J. A. Quincy, Esq., attorney for the assignee of certain certificate holders, on the ground that the charges were excessive, and that a great part of the services were not rendered for the Order of Solon, but were rendered in behalf of certain persons who had no authority to act for the order. The three attorneys, or at least two of them, were subjected to a lengthy cross-examination in order to arrive at a correct idea of the character and value of the services rendered by them.

There was no testimony offered by witnesses called on the part of the certificate holders to contradict the testimony of the three attorneys and their witnesses. The attempt was made to show, by cross-examination of the claimants, when their services commenced as attorneys. The evidence will show that this was December 7, 1892. On December 10, 1892, J. B. Crombie commenced proceedings in equity against the Order of Solon and the claimants were employed by the order to answer and defend against these proceedings. A preliminary injunction was granted which was afterwards made perpetual, and a receiver was appointed by the court. This case was taken to the Supreme Court and the decree of the lower court was reversed. This decision was rendered October 16, 1893. It is important in the further consideration of this case that this date, October 16, 1893, be firmly held in mind, because at that date a dividing line is drawn as to the legal services rendered by the claimants in this case. From December 7, 1892, to October 16, 1893, it cannot, and we do not understand that it will, seriously be contended that the claimants are not entitled to a reasonable compensation for their legal services rendered to the order. After October 16, 1893, it is alleged by those opposing the claim of claimants that the claimants did not represent the order, but were acting for persons who had no authority to act for the Order of Solon.

From about October 24, 1893, there were two parties claiming to be the rightful officers and true governing body of the Order of Solon. One of these bodies or parties was represented by the three claimants, and the officers they claimed to represent

were adjudged not to be the officers or governing body of the
Order of Solon.   The officers or governing body of which Glenn I.
Folsom was supreme president were acting in direct hostility
to the claimants and the officers they represented, and had their
own attorneys, Young and Trent, as counsel for the Order of
Solon as adjudged by the decree of the lower court and affirmed
by the Supreme Court.   This case is reported in 166 Pa. 33.
We are of the opinion that the claimants are precluded from
any claim to this fund for services rendered after October 24,
1893, as they were not the attorneys representing the officers of
the Order of Solon but were acting in direct opposition to the
officers of the order and also in opposition to the direct intima-
tion of the court below as to what was for its best interests.

Being of the opinion that these claimants are entitled to com-
pensation for their services rendered prior to October 24, 1893,
it then became a question how much they should receive.
The counsel contesting their claims contended earnestly in
his brief that they were not entitled to anything out of this fund,
as this was a trust fund for the certificate or policy holders, but
we will consider this hereafter.   He further contended that, if
entitled to anything, it should not be more than $2,000 each.
To sustain this contention he referred to the testimony of L. K.
Porter, on cross-examination, which is as follows :

" Q. Now, it seems that on October 16 the Supreme Court
reversed the decision of the lower court in the Crombie matter,
and then there was a meeting of what claimed to be the execu-
tive committee of the order, and it seems that there was a
meeting of that committee on October 19, 1893, and it seems,
according to these records, that at that time you and Mr. Fitz-
simmons and Mr. White put in a claim for services, and that
the amount was $2,000 each.   What have you to say in regard
to that charge, Mr. Porter?   A. The executive committee met
on October 19.   We put in no formal claim, and it seems they
passed.   Q. You were present there?   A. Not while the resolu-
tion was passing, Mr. Quincy, were we there.   Q. The record
of the proceedings here of October 19, 1893, shows : ' Attorneys
James Fitzsimmons, L. K. Porter and J. G. White presented
bills for services for $2,000 each.   The question being asked as
to whether that would include the quo warranto proceedings
before the attorney general, and all suits pending or otherwise

connected with the receivership, they stated that it did not, but finally agreed to include the same if the bills were paid at once.' What have you to say in regard to that claim for services at that time, Mr. Porter? A. First, we did not present any bills; and secondly, this executive committee met, and after they had passed some sort of a resolution, they came out and notified Mr. White, Mr. Fitzsimmons and myself, and said they had agreed upon $2,000 apiece, which I refused to accept as payment, but the matter was discussed for some little time, but finally each of us agreed, or rather we all agreed that if it was paid in cash right then and there, we would continue as counsel for the order and then we would let it go at that. I positively stated that I refused to accept it on any other condition. Q. You got a warrant? A. They brought out a warrant and handed it. Q. You accepted it? A. I took the warrant expressly on that condition that it be paid immediately."

To the same effect as the testimony of L. K. Porter, Esq., is the testimony of J. G. White, Esq.

Taking into consideration all the testimony relating to the claimants' services up to October 24, 1893, your auditors find, as a fact, that the claimants agree to receive $2,000 in full for their services up to that date, upon consideration that the warrants issued for same would be paid at once. That these were not paid was in consequence of a large number of warrants issued at the same meeting that M. G. Clarke, supreme treasurer, refused to pay. In addition to the testimony of claimants, the testimony of the experts fixes the value of these services up to the conclusion of the " Crombie Bill " at about $7,500. From all these facts in connection with the circumstances of the order, its troubles and financial conditions, the sum of $2,000 on all sides was concluded to be a satisfactory arrangement for the attorneys' charges up to October 18, 1893.

Because of the troubles that arose in this order shortly after October 19, 1893, or rather culminated between contending parties or factions in the order, the treasurer refused to pay these warrants, and they have been held by claimants. From all the facts and circumstances relating to this claim, considering all the evidence adduced and the minutes of the order, your auditors find, as a fact, that $2,500 each would be a reasonable compensation for the claimants for their legal services up to

October 19, 1893. And we further find that, upon this amount, there was paid each of these parties the sum of $1,000 for these services, by the receiver, prior to the filing of his first partial account, and the same was credited in said account. If any advances to them, or either of them, have been made since by the receiver they should be severally deducted on the balance of $1,500 found due to each. . . .

In consequence of dissatisfaction and trouble among those managing, or trying to manage, the business of this order, two parties arose, each claiming the right to govern the order. Glenn I. Folsom, who had been elected supreme president in May, 1892, absented himself from the supreme executive committee, of which W. R. Covert claimed to be supreme business manager, and he was suspended and C. L. McMillan appointed supreme president in his place, and for a like reason M. G. Clarke, supreme treasurer, was suspended and W. C. McKelvy was appointed by Mr. Covert supreme treasurer in his place. The claimants after the suspension of these two officers acted as counsel for C. L. McMillan, supreme president, and W. C. McKelvy, supreme treasurer, and other officers acting with them as the governing body of the order. Glenn I. Folsom and M. G. Clarke disregarded the action suspending them and still claimed their right to their respective offices, and with the other officers elected in May, 1892, or regularly appointed thereafter, claimed to be the governing body of this order. It was judicially determined that the parties whom the claimants represented as attorneys were not the rightful officers of the order, and the legal services performed after October 24, 1893, were in opposition to the governing body of the order. The claimants were acting with full knowledge of all the facts. Your auditors, therefore, conclude that they are bound by the decision of the court in this matter and, therefore, decline to allow the claimants for any services rendered by them after October 24, 1893.

*Errors assigned* were in dismissing exceptions to auditor's report.

*C. A. O'Brien*, for appellant.—De facto officers may bind the corporation: Com. v. Detwiller, 131 Pa. 615; Zearfoss v. Institute, 154 Pa. 449; Flannery Bros. v. State M. F. Ins. Co.,

175 Pa. 387; Morris v. Stevens, 178 Pa. 563; 2 Morawetz on Corp. secs. 750–752; Angell & Ames on Corp. secs. 286, 287, 289; McGargell v. Hazleton Coal Co., 4 W. & S. 425; Riddle v. Bedford County, 7 S. & R. 392; State v. Carroll, 38 Conn. 449.

. *Lyman D. Gilbert,* with him *Josiah H. Quincy,* for appellee.— A judgment in any controversy affecting the rights of any person to hold an office is conclusive upon the rights of any other person claiming through or under him whose rights have been adjudicated: Freeman on Judgments, sec. 170; Rex v. Grimes, 5 Burr. 2601.

Messrs. Fitzsimmons, Porter and White cannot ask for an allowance from the fund after they have allowed it to pass from the hands of the receiver to that of the treasurer of the order: Schwartz v. Oil Co., 164 Pa. 415.

OPINION BY MR. CHIEF JUSTICE STERRETT, July 19, 1899:

This and two other claims of $12,000 each for professional services, alleged to have been rendered to the Order of Solon, were presented by the appellant and his associates respectively. Being the same in amount, similar in character and depending on substantially the same facts and circumstances, these three. cases were heard and disposed of together by the learned auditors and court below, and the same course was adopted here.

As stated by the auditors these claims were each composed of five items, corresponding in services and amounts specified, the latter ranging from $1,000 to $5,000. As to the character, extent and value of the services, etc., considerable testimony, the details of which need not be noticed here, was submitted to the auditors for their consideration.

On behalf of some of the appellees, these claims were contested on the grounds that the charges were excessive, and that the greater part of the services, respectively, were rendered, not for the Order of Solon, but in behalf of persons who had no authority to act for that association. These objections involved questions of fact which were clearly for the determination of the auditors, and, on evidence quite sufficient to justify them in so doing, they found that "from October 24, 1893, there were two parties claiming to be the rightful officers and

true governing body of the Order of Solon," each acting in direct hostility to the other. One of these parties or bodies was represented by these three claimants and the other by Messrs. Young and Trent. Those who constituted the former party were adjudged not to be the officers or governing body of the Order of Solon by the court of common pleas, and its decision was affirmed by this Court, 166 Pa. 33. The auditors therefore held, and rightly, as we all think, that the claimants were precluded from participating in the fund, as creditors for professional services rendered after October 24, 1893, because they were not attorneys representing the officers of the Order of Solon, but were acting in direct opposition to the officers of the order, and also in opposition to the direct intimation of the court below as to what was for its best interests. It is unnecessary to consume time in discussing the soundness of this conclusion, or the sufficiency of the evidence from which it was fairly and legitimately drawn. Both are undoubtedly correct.

Having thus disposed of so much of the respective claims as are for services rendered after said last mentioned date, the auditors, proceeding to consider the extent and value of the services rendered prior·thereto, come to the conclusion that each of the claimants was entitled to receive the sum of $2,500, as just and reasonable compensation for said services, and that sum was accordingly awarded to them, respectively, subject to a credit for $1,000 already paid to each of them on account. Giving that force and effect which are due to the findings of auditors, we cannot say that they erred in not awarding a sufficient sum to fully compensate the claimants for services rendered prior to October 24, 1893.

The learned auditors' findings of fact and conclusions of law, so far as they are material, appear to have been carefully reviewed and approved by the learned president of the common pleas. In his opinion overruling exceptions, he says : " We are entirely satisfied with the conclusion arrived at by the auditors, that in all the matters except that for which allowance has been made they (the claimants) were not acting for the Order of Solon. And we are also clearly of the opinion that the amount allowed to them by the auditors is the utmost to which they could be entitled for the services actually rendered, and indeed,

if exceptions had been filed to the allowance of this amount, we should have been inclined to reduce it."

It is unnecessary to notice the specifications of error in detail. Our examination of the entire record as presented here discloses nothing to justify us in sustaining any of them. They are all dismissed, and the decree, as to this appellant, is affirmed and the appeal is dismissed at his costs.

*C. A. O'Brien,* for appellant.

*Lyman D. Gilbert,* with him *Josiah H. Quincy,* for appellee.